**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| WALLACE GASKINS, | : | Civil Action No. 18-1440 (JMV) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STEVEN JOHNSON, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**VAZQUEZ, District Judge:**

Petitioner is a state prisoner currently incarcerated at New Jersey State Prison in Trenton, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (D.E. 1.) For the reasons explained in this Opinion, the Court will deny the Petition and will not issue a certificate of appealability.

## I.    BACKGROUND

The New Jersey Superior Court, Appellate Division, summarized the underlying circumstances of this case, on post-conviction relief ("PCR") appeal:

> During the evening of March 8, 2008, Mark Harper, Antoine Walker, and Anthony Stover attended a birthday celebration for their friend Antwan Johnson in Irvington. At the time, Johnson, Walker, and Stover were members of the Grape Street Crips, but Harper was not. As Harper, Walker, and Stover left the party and walked to their car, they came under gunfire. According to Harper, he heard a scream, turned around, saw two men running at them, and then heard and saw gunshots. Stover was shot and died at the scene. Harper ran to the car and got inside, but was unable to get the key in the ignition. He saw an individual, whom he subsequently identified as Gaskins, standing a few feet away from the car window with a gun in his hand. The gun jammed while Gaskins was pointing it at Harper. While Gaskins attempted to un-jam the gun, Harper started

the car and "mash[ed] on the gas pedal," at which time he was shot in the wrist. Harper drove to the home of his girlfriend, who drove him to the hospital.

Following their initial investigation, the police arrested Gaskins on March 12. He provided them with an audio-recorded statement, which was played at trial. Gaskins told police that he was in a bar in Irvington on the night of the shooting when someone known as "Jimmy" called him and told him he had a problem and needed a gun. Gaskins then met up with Jimmy and Alexander Owens.

Jimmy and Owens told Gaskins that they had been in an altercation with members of the Crips and Jimmy needed a gun. Although Gaskins told them he did not want to be involved because "it didn't have nothing to do with [his] set," he gave Jimmy a .45 caliber handgun. Owens already had a 9mm handgun.

In addition to providing the gun, Gaskins drove the men to an alleyway near the house "the [Crips] dudes" were visiting. According to Gaskins, Jimmy and Owens walked to the alleyway, while Gaskins waited in the car. Jimmy called him and told him to move the car to another street, which Gaskins did. He then "waited for them, turned the car off, waited for them, heard gunshots." He said it sounded as if "the whole clip" of the 9mm gun, and four or five shots from his .45 caliber gun, were fired. According to Gaskins, Jimmy and Owens then ran to the car. Jimmy told Gaskins that the .45 caliber gun was jammed. Gaskins "unjammed the gun, took the shell out, and gave him the gun back." He then drove them home.

Gaskins told the police that he met with Jimmy and Owens the following night. They told him that they had run after the victims, and that one of "these dudes was in the car." Owens shot the one outside of the car with his 9mm gun, while Jimmy shot the individual in the car through the car window with the .45 caliber gun. Jimmy told Gaskins that he had sold both guns that morning.

The police recovered four shell casings from the scene of the shooting. They determined that at least two weapons were used in the shooting: a 9mm and a .45 caliber gun. The bullet removed from Stover's head was determined to have come from a 9mm gun; the wound in Harper's hand was determined to have been caused by a .45 caliber gun.

. . . .

2

An Essex County Grand Jury indicted defendant on charges of first-degree purposeful or knowing murder, *N.J.S.A.* 2C:11–3a(1) or (2) (Count One); first-degree attempted murder, *N.J.S.A.* 2C:5–1 and 2C:11–3 (Count Two); second-degree unlawful possession of a handgun, *N.J.S.A.* 2C:39–5(b) (Count Three); and second-degree possession of a handgun for unlawful purposes, *N.J.S.A.* 2C:39–4(a) (Count Four). The indictment also charged defendant with second-degree possession of a firearm, *N.J.S.A.* 2C:39–5(b) (Count Eight), which allegedly occurred a few days earlier than the other offenses charged in the indictment. The court subsequently severed Count Eight for disposition in a separate proceeding that never occurred.

Following a thirteen-day trial, the jury found defendant guilty of first-degree aggravated manslaughter as a lesser-included offense of purposeful or knowing murder, attempted murder, unlawful possession of a weapon, and possession of a weapon for an unlawful purposes. At sentencing, the trial court granted the State's motion seeking a discretionary extended term and also concluded that imposing consecutive sentences was warranted. The court merged defendant's convictions on Counts Two and Four and sentenced defendant to an aggregate extended term of life imprisonment with an eighty-five percent period of parole ineligibility under the No Early Release Act "NERA", N.J.S.A. 2C:43–7.2, which included the fifteen years required by the Graves Act, N.J.S.A. 2C:43–6(c), and five years of supervision upon release.

. . . .

On Count One, the court imposed a thirty-year custodial sentence, subject to an eighty-five percent period of parole ineligibility pursuant to NERA and the Graves Act. On Count Three, the court sentenced defendant to ten years imprisonment with a five-year period of parole ineligibility pursuant to the Graves Act. Finally, the court imposed a ten-year custodial sentence with a five-year period of parole ineligibility under the Graves Act for Count Eight, even though the court had severed that count and defendant had never been tried on this count.

Defendant filed a direct appeal of his conviction and the sentences imposed, arguing the trial court erred in denying his motion to admit his co-defendant's statement given as part of his guilty plea to reckless manslaughter as a declaration against interest, the sentences imposed were manifestly excessive, and his conviction for possession of a weapon without a permit, under Count Eight, must be reversed because there was no evidence that he pled guilty or was ever found guilty of that offense. In an unpublished opinion, we

affirmed the conviction, but vacated the sentence imposed on Count Eight and remanded for resentencing on the first two counts, with direction to the trial court to consider the NERA consequences of consecutive sentences. *State v. Gaskins, supra*, (slip op. at 26). The Supreme Court denied defendant's petition for certification. *State v. Gaskins, supra*, 213 N.J. at 397.

In December 2014, defendant filed his first pro se PCR petition. Thereafter, through appointed counsel, defendant filed an amended PCR petition alleging ineffective assistance of trial counsel. The PCR judge, who also presided over the jury trial, rendered an oral decision denying the petition without first conducting an evidentiary hearing. The court found that its instructions on accomplice liability "followed" the language of the Model Jury Charge (Criminal) and were more than adequate.

The court additionally found that the defense strategy conceding the gun charge, in light of defendant's admission that he possessed the weapon, but denying defendant's involvement in the homicide, was not ineffective assistance of counsel merely because the strategy did not succeed. Likewise, the court found no merit to the claim that defense counsel's failure to cross-examine Detective Jenkins, the arresting officer, who testified at trial, but who did not testify at the Miranda hearing, was ineffective assistance of counsel, in the absence of a certification from Detective Jenkins confirming that his testimony would have been as defendant alleged it would have been in defendant's certification. Finally, with regard to defense counsel's failure to object to the portion of the prosecutor's summation during which he suggested that the jury take the streets back, the court noted that it promptly addressed that comment.

*State v. Gaskins*, No. A-1283-15T3, 2017 WL 1549982, at *1–3 (N.J. Super. Ct. App. Div. May 1, 2017). Ultimately, the Appellate Division affirmed on PCR appeal, *id*. at *6, and the Supreme Court of New Jersey denied Petitioner's PCR petition for certification. *State v. Gaskins*, 173 A.3d 601 (N.J. 2017).

Petitioner filed the instant Petition in January of 2018. (D.E. 1.) Respondent filed an Answer, (D.E. 18.), and Petitioner filed a Reply, (D.E. 19.). Petitioner raises the following claims in this case:

1.      This matter must be remanded because the PCR court failed to address the Defendant's argument that trial counsel's failure to fully advise the Defendant of the penal consequences of the state's plea offer during the plea negotiations rendered counsel's representation ineffective. (D.E. 1, at 12.)

2.      The PCR court abused its discretion by refusing to hold an evidentiary hearing where the Defendant established a prima facie case of ineffective assistance of counsel in violation of U.S. Const. Amends. VI, XIV, N.J. Const. Art. I. Par. 10. (D.E. 1, at 15.)

> a.      Trial counsel was ineffective by failing to request the appropriate accomplice liability jury instruction that delineated differing degrees of responsibility as stated in the model jury charge. (*Id*.)

> b.      Trial counsel's failure to object to the prosecutor's inflammatory and prejudicial call for the jury to re-take the streets from gangs during the state's summation, and trial counsel's failure to request a curative instruction, rendered his performance ineffective. (*Id*. at 16.)

> c.      Trial counsel's errors during the *Miranda* hearing and at trial cannot be excused as reasonable legal strategy and constitute ineffective assistance of counsel. (*Id*.)

> d.      Appellate counsel's failure to raise meritorious issues on direct appeal rendering his performance was ineffective. (*Id*.)

3.      The trial court erred in denying defense counsel's motion to admit co-defendant Alexander Owens' statement involving his factual basis in support of his guilty plea to reckless manslaughter as an admission against interest pursuant to N.J.R.E. 803(c)(25). (*Id*. at 20.)

4.      The sentence imposed was manifestly excessive. (D.E. 1, at 24).

> a.      The trial court abused its discretion by imposing an extended term on Count II on the basis the Defendant was a persistent offender. (*Id*.)

> b.      The trial court abused its discretion by imposing the maximum possible 30-year base term on count I. (*Id*.)

        c.     The trial court abused its discretion by requiring the terms imposed on count I and II be consecutive rather than concurrent in nature. (*Id*.)

## II.    STANDARD OF REVIEW

Section 2254(a) permits a court to entertain claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners have the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas cases must give considerable deference to the determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). AEDPA deference also applies when there has been a summary denial. *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))). "Under the contrary to clause, a federal habeas court may grant the writ if the

state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (internal quotation marks omitted). As to § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen*, 563 U.S. at 180–81.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

In addition, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007). This requirement ensures that state courts "have 'an initial opportunity to pass

upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)). Nevertheless, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

## III. ANALYSIS

### A. Ineffective Assistance of Counsel Claims

Petitioner raises multiple claims of ineffective assistance of counsel.[1] The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Cont. amend. VI. The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced the petitioner. *See id.* at 687.

The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed

---

[1] Petitioner styles Ground One as the PCR court's failure to address an ineffective assistance of counsel claim, but for convenience, the Court will address Ground One along with Petitioner's other ineffective assistance of counsel claims.

by the Sixth Amendment." *Id.* at 687.  In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.*  The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688–89.  Thus, the standard is highly deferential, and courts presume that counsel has "rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  The petitioner bears the burden of demonstrating how he was prejudiced.  Thus, where a petition contains "no factual matter . . . and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280–81 (D.N.J. 2015) (internal quotation marks omitted) (citations omitted).

A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" courts should follow that course. *Id.*

Finally, even if a petitioner can establish both prongs of *Strickland*, a habeas petition fails unless the petitioner can demonstrate that the state court applied *Strickland* in an "objectively unreasonable manner." *See Woodford v. Viscotti*, 537 U.S. 19, 24–25 (2002); *see also* 28 U.S.C. § 2254(d)(1).

As shown below, because Petitioner failed to demonstrate a prima facie case of ineffective assistance of counsel, the PCR court did not abuse its discretion by refusing to hold an evidentiary hearing. *Gaskins*, 2017 WL 1549982, at *4 ("An evidentiary hearing . . . is required only where the defendant has shown a prima facie case and the facts on which he [or she] relies are not already of record.").

### a. Ineffective Assistance of Counsel in Failing to Advise Petitioner of the Consequences of the State's "Plea Offer"

First, Petitioner contends that trial counsel was ineffective for failing to fully advise him of the consequences of the State's "plea offer" during plea negotiations. Petitioner contends that the offer was "10 years to plead guilty to Count 1 only," and that the PCR court failed to address this argument. (D.E. 1, at 12.)

On habeas review, a district court must review the last reasoned state court decision on each claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal. The Appellate Division denied the claim as follows:

> The determination on whether to hold an evidentiary hearing on an ineffective assistance of counsel claim is left to the sound discretion of the PCR judge. *State v. Preciose*, 129 N.J. 451, 462 (1992). "An evidentiary hearing . . . is required only where the defendant has shown a prima facie case and the facts on which he [or she] relies are not already of record." Pressler & Verniero, Current N.J. Court Rules, comment 2 on *R.* 3:22–10 (2017).

> Based upon our review of the record and applicable law, we are satisfied defendant failed to establish a prima facie case of ineffective assistance of counsel, as he has failed to show his attorney's performance was deficient or resulted in prejudice. Consequently, he was not entitled to an evidentiary hearing. *Preciose, supra*, 129 N.J. at 462–64.

> Defendant contends remand is warranted because the PCR court neglected to address defendant's argument that trial counsel failed

to inform him of the penal consequences of the State's plea offer during plea negotiations. Defendant alleges that he would have accepted the State's plea offer had trial counsel explained the consequences that flow from such a decision.

. . . .

However, appellate counsel, in a footnote in the brief submitted on behalf of defendant, states that "[i]t is unclear from the record whether the State offered the defendant a plea agreement." Notably, although PCR counsel incorporated defendant's claims, which included his allegation that he had not been advised of the State's plea offer and the consequences of failing to accept the plea, in the Amended PCR petition, PCR counsel did not argue this particular issue before the PCR court. *See* R. 3:22–6(d) (requiring PCR counsel to only advance "all legitimate arguments requested by the defendant that the record will support").

Nor has defendant provided a transcript of any pre-trial proceeding where the State extended a plea offer. *See also* R. 3:9–1(c) (stating that where defendant has pled not guilty, counsel, in open court, "shall report on the results of plea negotiations") and R. 3:22–6(c) (permitting the court "to grant an application for the transcript of testimony of any proceeding shown to be necessary in establishing the grounds of relief asserted"). In the absence of supporting evidence, counsel was not obliged to advance this contention and the court was not required to address this claim.

*Gaskins*, 2017 WL 1549982, at *4.

With that decision in mind, Petitioner has not shown that the state court unreasonably applied either of the *Strickland* prongs. Claims of ineffective assistance of counsel in the context of rejecting a plea offer fall under the Supreme Court's decision in *Lafler v. Cooper*, 566 U.S. 156 (2012). Petitioner must show the following:

[A] reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id*. at 164.

The threshold question in a "failure to communicate a plea" context, is whether the State actually offered a formal plea offer to the Petitioner. If the State does not make a formal plea offer, however, the issue of ineffective assistance "simply does not arise." *Id*. at 168. Here, the Appellate Division emphasized that Petitioner offered no evidence that the State had actually presented a plea offer, formal or otherwise. *Gaskins*, 2017 WL 1549982, at *4. To this end, PCR appellate counsel acknowledged that "[it] is unclear from the record whether the State offered the defendant a plea agreement." *Gaskins*, 2017 WL 1549982, at *4.

In his Petition and supporting documents, Petitioner cites only to the plea agreement offered to his co-defendants. (D.E. 1, at 12 (citing D.E. 18-36); D.E. 18-18, at 145.) Indeed, in his PCR certification, Petitioner fails to explain the details of the alleged offer, stating only that he "would have pled guilty to the State's plea offer." (D.E. 18-18, at 145.)

Like the Appellate Division, this Court finds that without evidence of an actual plea offer, there is no basis for this Court to conclude that trial counsel's performance was deficient or that Petitioner suffered any prejudice. *See, e.g.*, *Shnewer v. United States*, No. 13-3769, 2016 WL 867461, at *24 (D.N.J. Mar. 7, 2016) ("Mr. Shnewer is not entitled to relief on his claim that Mr. Cipparone was ineffective by failing to disclose to him a plea offer since no formal plea offer was ever extended to him by the government."); *Thomas v. United States*, No. 12-4358, 2014 WL 5361264, at *6 (D.N.J. Oct. 17, 2014) ("Indeed, in *Lafler*, the Supreme Court made clear that there can be no ineffective assistance of counsel claim under *Strickland* if there is no actual plea offer."); *McClain v. United States*, No. 12–2205, 2013 WL 1163562, at *4 (D.N.J. Mar.19, 2013); *see also United States v. Terry*, No. 14-1006, 2015 WL 4255527, at *5 (W.D. Pa. July 14, 2015).

Accordingly, as Petitioner has failed to establish either prong of *Strickland*, he is not entitled to habeas relief on this claim.

### b. Ineffective Assistance of Counsel in Failing to Request the Model Accomplice Liability Jury Charge

Next, Petitioner contends that counsel was ineffective for failing to request the "Model Jury Instruction for Accomplice Liability, or to object to the Court's self-crafted charge which failed to instruct the jury on the different states of mind for accomplices as mandated by *State v. Bielkiewics*, 267 N.J. Super. 520 (App. Div. 1993)." (D.E. 18-18, at 32–33.) Petitioner's PCR appellate counsel argued that the charge should have better explained that "a principal and an accomplice, although perhaps liable for the same guilty act, may have acted with different or lesser mental states, thus giving rise to different levels of criminal liability." (*Id.* at 34. (quoting *State v. Ingram*, 196 N.J. 23, 41 (2008).) Petitioner argues that the trial court's accomplice liability instructions were confusing because the jury asked for reinstruction on three separate occasions. (*Id.* at 36.)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal. The Appellate Division denied the claim as follows:

> Next, the court properly rejected defendant's contention that his petition should have been granted because trial counsel failed to object to the court's jury charge on accomplice liability, which defendant urges was legally flawed. Initially, in as much as this claim could have been raised on direct appeal, it is procedurally barred. *R.* 3:22–4(a).
>
> Turning to the merits, as the PCR court observed, the trial court's instruction on accomplice liability "tracked" the language of the Model Jury Charge (Criminal), which requires a clear instruction that a defendant may have a different state of mind from other co-defendants to commit a separate offense. *State v. Bielkiewicz*, 267 N.J. Super. 520, 527–28, 532, 533 (App. Div. 1993).

The trial court issued the accomplice liability charge several times. Specifically, the trial court provided the following instruction:

> Remember that this defendant can be held to be an accomplice with equal responsibility only if you find, as a fact, that he possessed the criminal state of mind that is required to be proved against the person actually [ ] committing the act.

> Now, in order to find the defendant guilty as an accomplice to the specific crime charged, you must find the defendant had the purpose to participate in that particular crime. He must act with the purpose of promoting or facilitating the commission of the substantive crime with which he is charged.

> It is not sufficient to prove only that the defendant had knowledge that another person was going to commit the crimes charged. The state must prove that it was defendant's conscious object that the specific conduct charged be committed.

In addition, the third time the court instructed the jury on accomplice liability the court charged that the State had to prove defendant "possessed the criminal state of mind that is required to be proved against a person who actually committed the crime." The trial court told the jury that they were evaluating the "state of mind of this defendant . . . [n]ot the state of mind of some other person." Hence, the trial court's instructions comported with the language of the Model Jury Charge (Criminal).

*Gaskins*, 2017 WL 1549982, at *4–5.

Here, the state court's decision was not an unreasonable application of clearly established federal law. To rise to a constitutional violation, a faulty jury instruction must so infect the entire trial that the resulting conviction violates due process. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004); *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). The instruction must be more than erroneous as petitioner must show that there was a "reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton*, 541 U.S. at 437.

Additionally, courts may not judge the instruction in isolation, but must consider the instruction "in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72.

In the present case, after instructing the jury on the elements of murder, attempted murder, and their lesser included offenses, the trial court instructed the jury that they had to consider the elements of accomplice liability separately for each of the offenses and their lesser included offenses. (D.E. 18-33 at 39:19 to 50:24, 82:7 to 96:16.) The trial court also instructed that:

> [Defendant's] state of mind must be proved regardless of any state of mind by anyone who is the actual participant in the commission of the offense. *And that is true with respect to each of these offenses, his state of mind is what you are measuring. Not the state of mind on anyone else.*
>
> Even though there is a reference to community of purpose, the conduct may have a community of purpose, but the state of mind that must be proved as to the defendant, whose accomplice liability you are considering, this defendant, must be proved individually as to him beyond a reasonable doubt.

(*Id*. at 92:8–20 (emphasis added).)

Taken together, the trial court's instructions comported with the then Model Jury Charge. (D.E. 18-18, at 91.)

This Court must presume that the jury followed the trial court's instructions. *See, e.g.*, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Taliaferro v. Balicki*, No. 11-4714, 2013 WL 5539033, at *17 (D.N.J. Oct. 7, 2013). As a result, after viewing the instructions as a whole, Petitioner fails to demonstrate that counsel was deficient for failing to request the model charge, or otherwise object to the accomplice liability charge. Similarly, Petitioner has failed to show a reasonable probability that the outcome of the proceedings would have been different. Accordingly, as Petitioner has failed to demonstrate that the Appellate Division unreasonably applied either prong of *Strickland*, he is not entitled to habeas relief on this claim.

### c. Ineffective Assistance of Counsel in Connection with the Prosecutor's Statements During Summation

In his next claim, Petitioner argues that trial counsel was ineffective for: (1) failing to object to the prosecutor's inflammatory remarks at summation, and (2) failing to request a curative instruction.

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal, denying the claim as follows:

> An additional claim advanced by defendant, which is procedurally barred because it could have been raised on direct appeal, is defendant's claim of prosecutorial misconduct during summation when the prosecutor suggested that the jury take back the streets. We agree, as the PCR court found, that once the statement is considered in context, it was not so egregious as to warrant post-conviction relief.
>
> It is undisputed that the State's theory and evidence presented during trial indicated that the crimes were gang-related. There was testimony during the trial from one witness that the area between Howard and Grace Streets in Irvington was the territory of the Bloods and that the witness, himself, was a Crip living in the middle of Bloods' territory. In summation, the prosecutor remarked:
>
> > Well, I got news for [B]loods and [C]rips. Now this . . . is not their territory. Those streets belong to people of the City of Irvington, the County of Essex, all of us. They're not their streets[,] okay. They don't get—he had his friends do not get to decide who lives and dies.
>
> The trial court immediately intervened and directed the prosecutor to "stay with the evidence." The comment was never repeated.
>
> Prosecutors "are expected to make a vigorous and forceful closing argument to the jury," and "are afforded considerable leeway in that endeavor[.]" *State v. Jenewicz*, 193 N.J. 440, 471 (2008) (quoting *State v. Nelson*, 173 N.J. 417, 460 (2002)). However, a prosecutor's conduct may not be "so prejudicial to an accused as to deny him a fair trial[.]" *State v. Rose*, 112 N.J. 454, 509 (1988). Where a prosecutor's conduct oversteps the bounds of propriety so as to deny a defendant a fair trial, reversal is may be warranted. *Nelson, supra*, 173 N.J. at 461. The conduct, however,

must be "clearly and unmistakably improper, and must have substantially prejudiced the defendant's fundamental right to have a jury fairly evaluate the merits of his or her defense." *State v. Ingram*, 196 N.J. 23, 43 (2008) (quoting *State v. Harris*, 181 N.J. 391, 495 (2004)).

Here, the prosecutor's comment, though inappropriate, was fleeting, not repeated, and quickly quelled by the court. Thus, when considered as whole, in the context of the entire trial and summation, the statement was not "so egregious as to deny to defendant a fair trial." *See State v. Engel*, 249 N.J. Super. 336, 382 (App. Div.), *certif. denied*, 130 N.J. 393 (1991).

*Gaskins*, 2017 WL 1549982, at *5.

Here, the state court's decision was not an unreasonable application of clearly established federal law. The Supreme Court has held that for a prosecutor's remarks to rise to the level of a constitutional violation, they must "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Robinson v. Johnson*, No. 15-8097, 2018 WL 2859672, at *9–10 (D.N.J. June 11, 2018). It is not enough that the comments are inappropriate, undesirable, or worthy of "universal condemnation." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Lemons v. Warren*, No. 12-2355, 2015 WL 1497330, at *19 (D.N.J. Apr. 1, 2015).

In the present case, although the prosecutor's comments were inappropriate, the State's theory of the case emphasized that the crimes were gang related. With that context, and along with the trial court's swift admonition to "stay with the evidence," this Court finds that the prosecutor's remarks did not infect the trial with unfairness. *Gaskins*, 2017 WL 1549982, at *5.

Additionally, the jury charges instructed the jury not to consider the prosecutor's comments as evidence on a number of occasions. (D.E. 18-33, at 7:12–13, 15:13–14, 16:1–8, 71:1–5, 88:8–11.) This Court must presume that the jury followed those instructions, and Petitioner offers

nothing to rebut that presumption. *See, e.g., Weeks*, 528 U.S. at 234; *Robinson*, 2018 WL 2859672, at *9–10.

Consequently, assuming *arguendo* that counsel was deficient for not objecting, Petitioner has not shown to a reasonable probability that the outcome of the case would have been different had counsel objected to the inflammatory statements or requested a curative instruction. As a result, Petitioner has failed to demonstrate prejudice under *Strickland*, and he is not entitled to habeas relief on this claim.

### d. Ineffective Assistance of Counsel at the *Miranda* Hearing

Next, Petitioner contends that trial counsel was ineffective at the *Miranda* hearing for failing to (1) call Detective Jenkins as a witness and cross-examine him, and (2) properly cross-examine Detective Green. More specifically, in his PCR certification, Petitioner contends that Detectives Jenkins and Green interrogated him earlier in the day without a *Miranda* warning and then later coerced Petitioner into giving taped statements. (D.E. 18-18, at 142–45.)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal, which affirmed for substantially the same reasons as set forth by the PCR court, which are as follows:

> Likewise, the court found no merit to the claim that defense counsel's failure to cross-examine Detective Jenkins, the arresting officer, who testified at trial, but who did not testify at the Miranda hearing, was ineffective assistance of counsel, in the absence of a certification from Detective Jenkins confirming that his testimony would have been as defendant alleged it would have been in defendant's certification.

*Gaskins*, 2017 WL 1549982, at *3.

Here, the state court's decision was not an unreasonable application of clearly established federal law. Petitioner cannot show that counsel was deficient with mere speculation as to how

Detectives Jenkins and Green would have testified. *See, e.g.*, *Cross v. Nogan*, No. 17-10430, 2021 WL 1440093, at *8 (D.N.J. Apr. 15, 2021); *Cox v. Warren*, No. 11-7132, 2013 WL 6022520, at *6 (D.N.J. Nov. 13, 2013) (citing *Echols v. Ricci*, No. 09-5548, 2011 WL 3678821, at *32 (D.N.J. Aug. 19, 2011)), *aff'd*, 492 F. App'x 301 (3d Cir. 2012).

Similarly, under the second *Strickland* prong, "[p]rejudice resulting from ineffective assistance of counsel cannot be based on mere speculation as to what witnesses might have said." *D'Amario v. United States*, 403 F. Supp. 2d 361, 372 (D.N.J. 2005) (citing *Duncan v. Morton*, 256 F.3d 189, 201–02 (3d Cir. 2001) (holding that the failure to present the sworn statement or testimony of a proposed witness is fatal to an attempt to show *Strickland* prejudice)).

Instead, a petitioner must provide sworn statements or other competent evidence as to how the witnesses would have testified in order to establish either prong of *Strickland*. *See Duncan*, 256 F.3d at 201–02; *see also, e.g.*, *Fulton v. United States*, No. 18-16526, 2020 WL 133288, at *5 (D.N.J. Jan. 13, 2020); *Simmons v. D'Ilio*, No. 14-2032, 2017 WL 1535097, at *13 (D.N.J. Apr. 27, 2017); *Judge*, 119 F. Supp. 3d at 285. In the instant Petition, like his arguments before the state courts, Petitioner has once again failed to provide sworn statements or other competent evidence to show how the detectives would have testified.

Petitioner also fails to demonstrate prejudice for another reason. Regardless of the actions of the detectives earlier in the day, Petitioner testified at the *Miranda* hearing (1) that Detective Green read him his rights prior to giving the taped statement; (2) that he understood his rights; (3) that he signed the *Miranda* waiver form; (4) that he waived his right to counsel; (5) that the detectives did not threaten Petitioner or make any promises; and (6) that his statement was voluntary. (D.E. 18-27, at 30–31.) It is well-settled that "[s]olemn declarations in open court carry

a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

In light of that testimony, the trial court found that Petitioner's taped statement was admissible, and that Petitioner provided it knowingly, voluntarily, and intelligently. Ultimately, Petitioner fails to rebut the presumption that he was telling the truth during his sworn testimony, which led to the admissibility of his taped statement. As a result, for that reason as well, Petitioner fails to demonstrate prejudice under *Strickland*. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### e. Ineffective Assistance of Appellate Counsel

Finally, Petitioner contends that appellate counsel was ineffective for failing to raise, on direct appeal, Petitioner's claims related to the accomplice liability jury charge and the prosecutor's inflammatory statements at summation.

"A criminal defendant has a right to the effective assistance of appellate counsel on the first appeal as of right." *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020). To assess the performance of appellate counsel, courts apply the same two-prong test set forth in *Strickland*. *Id*.

As set forth above, Petitioner's claims related to the accomplice liability jury charge and the prosecutor's inflammatory statements lack merit. Consequently, even if appellate counsel were deficient, Petitioner cannot demonstrate that the failure to raise meritless claims resulted in prejudice. *E.g.*, *U.S. v. Fulford*, 825 F.2d 3, 9 (3d Cir. 1987) (finding that counsel's failure to pursue a meritless claim could not have prejudiced the petitioner). Consequently, Petitioner is not entitled to habeas relief on this claim.

**B. Evidentiary Claim**

Petitioner next contends that the trial court erred by denying his motion to admit the statement of his co-defendant, Alexander Owens. More specifically, Petitioner argues that Mr. Owens' factual basis in support of his guilty plea was admissible "as an admission against interest pursuant to N.J.R.E. 803(c)(25)." (D.E. 1, at 20–21.) According to Petitioner, as part of that factual basis, Mr. Owens stated that he "had a lack of knowledge regarding the [Petitioner's] participation or non-participation," on the night in question. (*Id*.) In Petitioner's view, that statement would have "tended to negate the intent element for accomplice liability, which the State relied upon to convict [Petitioner] of [aggravated manslaughter[2]]. (*Id*.)

The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on direct appeal. The Appellate Division denied the claim as follows:

> Gaskins argues that the trial judge erred in refusing to admit the entirety of the factual basis Owens gave to support his guilty plea. He argues that the portions of the statement barred by the judge would have exonerated him.
>
> At trial, the State presented two theories of criminal liability with respect to Gaskins. First, it argued that he was identified by Harper as the person who shot him. Second, it argued that, because Gaskins had admitted in his statement that he supplied one of the weapons used in the shooting and that he drove the others to and from the site of the shooting, he was an accomplice. *N.J.S.A.* 2C:2–6. During summation, the prosecutor conceded that Gaskins did not shoot Stover, but maintained that he had shot Harper.
>
> Prior to the start of the trial, Gaskins sought to admit the factual basis for Owens' guilty plea, arguing that it inculpated Owens with respect to the killing of Stover and exculpated Gaskins with respect to both shootings. The State opposed the application.
>
> During Owens' plea, the following exchange occurred between Owens and his attorney:

---

[2] The indictment charged Petitioner with knowing and purposeful murder, but the jury convicted him of the lesser included offense of aggravated manslaughter.

Q. Mr. Owens, I'm going to direct your attention to the date of March 9th, 2008. Do you recall that date?

A. Yes, sir.

Q. Were you in the Township of Irvington?

A. Yes, sir.

. . . .

Q. You were in possession of a weapon on that day, is that correct?

A. Yes, sir.

Q. And you discharged that weapon?

A. Yes, sir.

Q. It—you ultimately learned that it struck an individual and that individual expired from those wounds, is that correct?

A. Yes, sir.

Q. Did you discharge that weapon recklessly?

A. Yes, sir.

[DEFENSE COUNSEL]: Your Honor, I believe there's a satisfactory factual basis.

THE COURT: State?

[PROSECUTOR]: Satisfied.

[DEFENSE COUNSEL]: Judge, a few more questions.

Q. Mr. Owens, there were other individuals that were arrested with you that day, is that correct?

A. Yes, sir.

Q. *In terms of their involvement, you have no knowledge one way or another as to what they did or what they were arrested for, what they may have participated in that day, is that correct?*

A. *Yes, sir. I don't have—I don't know none of they [sic] involvement, what they did.*

Q. One guy's name you learned to be Gaskins?

A. Yes, sir.

Q. And the other's guy's name you learned to be Brown?

A. Yes, sir.

[DEFENSE COUNSEL]: That's all I have, Judge.

The trial judge denied Gaskins' application in part. He was willing to permit use of the first portion of the statement, in which Owens acknowledged that he shot Stover. However, the judge was not willing to permit Gaskins to use the remainder of the statement, in which Owens claimed that he fired the gun recklessly and also denied any knowledge of the nature of Gaskins' involvement.

. . . .

With regard to Owens' statement that he was unaware of Gaskins' involvement, the Judge stated:

> So he simply doesn't know what they did. He has no idea what they did, what their involvement was. He doesn't say they weren't involved, he says he doesn't know. And that's not part of a declaration against interest. He's not saying that they weren't involved, he's expressing a lack of knowledge.

> And it's not appropriate to call people before the jury for the nugatory purpose of having them say they don't know what's going on. And it's not appropriate to have somebody's out of court statement that he doesn't know what's going on admitted to the jury to foster the impression . . . that may be sought by one side or the other.... [H]e doesn't say anything, but coupling it with the other part enables the defense to use it. . . . I submit and I find misuse it to claim something that's been claimed here already. And I don't mean that in a designed scheming way.

> . . . .

> Generally speaking, a statement made by a declarant which exposes the declarant to criminal liability and exculpates a defendant is admissible. See *State v. Williams*, 169 N.J. 349, 360–63 (2001); *State v. White*, 158 N.J. 230, 238–48 (1999); *State v. Abrams*, 140 N.J. Super. 232, 235–37 (App. Div. 1976), *aff'd o.b.*, 72 N.J. 342 (1977). "[T]he question of the statement's admissibility primarily turns on the words of the statement itself rather than the extrinsic circumstances pertaining to the reliability of the statement...." *Williams*, *supra*, 169 N.J. at 358. Consequently, "extrinsic circumstances of reliability are irrelevant to admissibility." *Id.* at 359.

> In light of the applicable law, the portion of the statement in which Owens admitted shooting Stover was clearly a statement against interest. The last portion of Owens' statement, in which he asserted his lack of knowledge, one way or another, about Gaskins' role was not a statement against Owens' interest. It was not relevant to the guilty plea and did not subject him to any criminal liability. It was simply a gratuitous statement that he had no knowledge about what Gaskins did. Consequently, it was properly excluded.

*Gaskins*, 2012 WL 3022048, at *3–4 (emphasis added).

Here, the state court's decision was not an unreasonable application of clearly established federal law, and Petitioner has not raised a valid constitutional violation. Additionally, Petitioner did not raise this evidentiary challenge as a federal claim in the state courts. Instead, his direct appeals relied entirely on the New Jersey Rules of Evidence and state law cases. (*See* D.E. 1, at 20–21; D.E. 18-7, at 16–25; D.E. 18-10, at 6-12.) The state courts, in turn, addressed the issue in terms of state law. *Gaskins*, 2012 WL 3022048, at *3–4.

"Where Petitioner has alleged no specific violation of federal law, or has raised no federal constitutional issue, his evidentiary argument is not within the province of the [federal habeas court] to address." *Oliver v. Santiago*, No. 14-1334, 2017 WL 2735409, at *9 (D.N.J. June 23, 2017) (alteration in original) (quoting *Bagarozy v. Goodwin*, No. 08-0468, 2008 WL 4416455, at *14 (D.N.J. Sept. 23, 2008)). Such errors would have been errors of state law, and federal habeas "relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67; *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Instead, "[t]o rise to the level of a constitutional violation, a state court's evidentiary decision must have been so arbitrary or prejudicial that it rendered the trial fundamentally unfair, thereby violating a petitioner's due process rights." *E.g.*, *Sample v. D'Ilio*, No. 15-5487, 2018 WL 3054676, at *5 (D.N.J. June 20, 2018) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12–13 (1994); *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001)).

In the present case, this Court perceives no error from the state courts with respect to the exclusion of Mr. Owens' testimony that he did not know, one way or the other, about Petitioner's involvement on the night in question. That testimony was not relevant to the guilty plea, and it did not subject Mr. Owens to any criminal liability. *Gaskins*, 2012 WL 3022048, at *4. Consequently, this Court agrees with the Appellate Division that that testimony was not admissible as a statement against Mr. Owens' interest.

Accordingly, Petitioner has failed to demonstrate any evidentiary error, let alone one that was so "arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Sample*, 2018 WL 3054676, at *5. As a result, Petitioner is not entitled to habeas relief on this claim.

## C. Excessive Sentence Claims

Finally, Petitioner raises the following excessive sentence claims arguing that the trial court abused its discretion by (1) imposing a persistent offender extended term of life in prison for attempted murder under Count II; (2) imposing a 20-year[3] sentence for aggravated manslaughter under Count I; and (3) deciding that Counts I and II should run consecutively, rather than concurrently. Additionally, Petitioner vaguely contends that his aggregate sentence constitutes cruel and unusual punishment under the Eighth Amendment.

A federal court's ability to review state sentences is limited, however, to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J.1987) (citation omitted). Thus, federal courts may not review a challenge to a state court's discretion at sentencing unless it violates a separate federal constitutional limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984); *see also* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67.

"The Eighth Amendment, which forbids cruel and unusual punishments contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). The Supreme Court has identified three factors to determine whether a sentence is so disproportionate to the crime that it violates the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other

---

[3] Petitioner's headings challenge his old 30-year maximum sentence for aggravated manslaughter, but the substance of his arguments address his resentenced term of 20 years for aggravated manslaughter.

criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 292 (1983).

The first factor acts as a gateway prong to the proportionality inquiry. The Eighth Amendment only forbids sentences that are "grossly disproportionate" for a conviction for the crime involved. *Butrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at *16–17 (D.N.J. Mar. 28, 2018). If the petitioner fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge is at an end. Successful proportionality challenges in non-capital cases are "exceedingly rare." *Ewing*, 538 U.S. at 21 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)); *United States v. Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014). "Absent colorable allegations that his sentence constitutes cruel and unusual punishment . . . or that it is arbitrary or otherwise in violation of due process, the legality and length of his sentence are questions of state law," over which this Court has no jurisdiction. *E.g.*, *Rabaia v. New Jersey*, No. 15-4809, 2019 WL 699954, at *12–13 (D.N.J. Feb. 20, 2019) (citing *Chapman v. United States,* 500 U.S. 453, 465 (1991)).

Petitioner challenges to the trial court's discretion in (1) imposing a persistent offender extended term for attempted murder under Count II; (2) imposing a 20-year sentence for aggravated manslaughter under Count I; and (3) deciding that Counts I and II should run consecutively, are questions of state law over which this Court has no jurisdiction. Even if the trial court had abused its discretion, these are errors of state law, and federal habeas "relief does not lie for errors of state law." *Estelle*, 502 U.S. at 67; *Rosemeyer*, 117 F.3d at 110. It "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *McGuire*, 502 U.S. at 67–68. Accordingly, Petitioner is not entitled to habeas relief on the state law challenges to his sentence.

The only federal claim before the Court is Petitioner's claim that his aggregate sentence of life in prison with a parole disqualifier of 80 years and 9 months[4] constitutes cruel and unusual punishment under the Eighth Amendment. On resentencing, the trial court sentenced Petitioner to (1) 20 years imprisonment for aggravated manslaughter under Count I, subject to an 85% NERA parole disqualifier and the Graves Act, N.J. Stat. §§ 2C:43-7.2, 2C:43-6c; (2) an extended term of life imprisonment under Count II, subject to NERA and the Graves Act, for first degree attempted murder; and (3) 10 years imprisonment for unlawful possession of a handgun under Count III, subject to the Graves Act. (D.E. 18-12, at 2.) The trial court ordered the sentences on Counts I and II to run consecutively, but the sentence on Count III to run concurrently with Count II.

Under Count I, the sentence of 20 years for first degree aggravated manslaughter was below the statutory limit of thirty years. N.J. Stat. § 2C:11-4(c) (providing for an ordinary term between ten and thirty years). Petitioner's extended term of life in prison under Count II, for first degree attempted murder, was within the statutory limit. N.J. Stat. § 2C:43-7(a)(6) (providing for an extended term between 35 years and life imprisonment); N.J. Stat. § 2C:5-4 (detailing that the penalties for attempted murder are the same as those for murder). Similarly, 10 years in prison for

---

[4] Petitioner appears to be under the impression that his sentence is "57 years and 6 months," and that the 85% NERA disqualifier applies to that number. (D.E. 1, at 24.) The Court disagrees On Count II, he received a sentence of life in prison, subject to NERA and the Graves Act. For the purposes of NERA, a life sentence is 75 years, of which he must serve 85%, equaling 63 years and 9 months. N.J. Stat. § 2C:43-7.2. For the purposes of the Graves Act, the Court set the minimum term of imprisonment "at one half the term imposed," in this case, 37 years and 6 months, which is half of 75 years. N.J. Stat. § 2C:43-6. If a sentence is subject to both NERA and the Graves Act, NERA will require a longer parole disqualifier and subsume the Graves Act disqualifier. *State v. Garron*, 827 A.2d 243, 252 (N.J. 2003). On Count I, Petitioner received a sentence of 20 years imprisonment to run consecutively with Count II, with an 85% NERA disqualifier, *i.e.*, 17 years, which subsumes the 10-year Graves Act disqualifier. Consequently, Petitioner's total disqualifier is 80 years and 9 months.

second degree unlawful possession of a handgun was within the statutory limit. N.J. Stat. §§ 2C:39-5(b), 2C:43-6(a)(2).  Consequently, each of Petitioner's sentences were within the statutory limits, and "[g]enerally, a sentence within the [statutory] limits . . . is neither excessive nor cruel and unusual under the Eighth Amendment."  *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011).

Nor does Petitioner's sentence of 20 years for aggravated manslaughter rise to the level of disproportionality that violates the Eighth Amendment. *See Cross*, 2021 WL 1440093, at *14 (finding that a sentence of 28 years for aggravated manslaughter did not rise to the level of disproportionality under the Eighth Amendment); *Bishop v. New Jersey*, No. 16-9178, 2018 WL 4198884, at *12 (D.N.J. Aug. 31, 2018) (finding that 24 years for aggravated manslaughter was not disproportional).  Similarly, Petitioner's life sentence for attempted murder is not grossly disproportionate to the crime involved.  *See Moore v. Hendricks*, No. 04-2337, 2006 WL 1469897, at *20 (D.N.J. May 26, 2006); *State v. Byrd*, No. A-0597-10T4, 2012 WL 787267, at *1 (N.J. Super. Ct. App. Div. Mar. 13, 2012) (addressing life in prison for attempted murder); *State v. Clauso*, No. A-2565-04T3, 2005 WL 3050649, at *1 (N.J. Super. Ct. App. Div. Nov. 16, 2005) (same).  Petitioner aimed a loaded gun at a person and pulled the trigger. *Gaskins*, 2012 WL 3022048, at *1.  Had the gun not jammed, Petitioner might have ended a second life. *Id*.

For the foregoing reasons, Petitioner is not entitled to habeas relief on these claims.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Based on the discussion in this Opinion, Petitioner has not made a substantial showing of a denial of a constitutional right. Accordingly, this Court will not issue a certificate of appealability.

## V.     CONCLUSION

For the reasons discussed above, the Court will deny the Petition and will not issue a certificate of appealability. An appropriate Order accompanies this Opinion.


Dated: 6/30/21

JOHN MICHAEL VAZQUEZ
United States District Judge